T.C. Memo. 2019-62

UNITED STATES TAX COURT

H. GARRETT FREY AND MARY K. FREY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12125-16.                         Filed June 3, 2019.

H. Garrett Frey and Mary K. Frey, pro sese.

Richard J. Hassebrock, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  Respondent determined deficiencies of $44,485 and

$46,808 and penalties of $8,897 and $9,361.60 under section 6662(a) with respect

to petitioners' Federal income tax for 2012 and 2013, respectively.  Respondent

also determined a $4,680.80 addition to tax under section 6651(a)(1) for 2013.

The issues for decision are whether petitioner H. Garrett Frey (petitioner) is

[*2] entitled to deduct as business expenses on his personal returns amounts he allegedly paid for services performed by his solely owned but defunct corporation or whether those amounts represent an invalid assignment of income; whether petitioners are entitled to deduct net operating or bad debt losses; whether petitioners are liable for the accuracy-related penalties; and whether they are liable for the late filing addition to tax. All section references are to the Internal Revenue Code (Code) in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Ohio when they filed their petition.

Beginning in 1962, petitioner was a stockbroker. He was the chief operating officer of three firms: Harrison & Co., Queen City Securities (Queen City), and Jettrade, Inc. (Jettrade). Petitioner was the sole shareholder of Queen City.

As a result of a series of financial crises, Queen City ceased to conduct business in 1990 and did not have any employees in 2012 or 2013. Jettrade was formed by petitioner's son, John Frey. During 2012 and 2013 petitioner was the

[*3] president and chief executive officer of Jettrade. Jettrade Holding, LLC, owned 99% of Jettrade. During 2012 and 2013 petitioner owned 76.2% of Jettrade Holding, LLC.

Petitioner performed services during 2012 and 2013 out of his home and from an office. Jettrade paid petitioner $214,150 in 2012 and $205,300 in 2013 as compensation for his services. Petitioner assigned all of the compensation he received from Jettrade during 2012 and 2013 to Queen City.

On their Forms 1040, U.S. Individual Income Tax Return, for 2012 and 2013, petitioners reported negative gross income. On Schedule C, Profit or Loss From Business, attached to each return, petitioner reported his business as stockbroker and compensation from Jettrade as income. He deducted as commissions and fees the amounts received from Jettrade. He also deducted various other expenses and claimed a loss deduction for each year. Petitioner's intent was to use the tax loss incurred by Queen City during years in or before 1990 to avoid tax on the amounts he received from Jettrade. Petitioners reported no tax liability for 2012 or 2013.

Petitioner prepared the Form 1040 for each year. He did not consult any professionals with respect to the returns because of the cost and because he was dissatisfied with and had fired professionals who had prepared petitioners' and

**[*4]** Queen City's returns for earlier years. Petitioners' 2013 return was received by the Internal Revenue Service (IRS) on June 2, 2014.

In the notice of deficiency for 2012 and 2013, the deductions claimed on Schedules C for amounts assigned to Queen City were disallowed. Computational adjustments were made for the taxable amounts of Social Security income petitioners received and for self-employment tax on petitioner's income as a stockbroker.

As stipulated by the parties, the supervisor of the examining agent signed a Civil Penalty Approval Form indicating that she approved the initial determination to impose the section 6662(a) penalties on petitioners for 2012 and 2013. The approval form explained in detail the reasons for assertion of the 6662(a) penalties for substantial understatements of income tax and, in the alternative, for negligence.

OPINION

Preliminary matters

The petition in this case was filed May 23, 2016, but proceedings were stayed from January 27 to July 28, 2017, because petitioners filed a proceeding in bankruptcy. The case was set for trial in Cincinnati, Ohio, on September 17, 2018,

**[*5]** by notice served April 17, 2018. Before discussing the substantive issues, we address two procedural matters.

First, on July 3, 2018, respondent served on petitioners requests for admission. As required by Rule 90(b), the requests advised petitioners of the consequences of failing to respond within 30 days after service or otherwise as required by Rule 90(c). Petitioners failed to respond. Before and after trial, sometime after the matters set forth were deemed admitted under Rule 90(f), petitioners sent various documents to the Court that did not properly seek withdrawal or modification of the admissions. Most of the items set forth in the requests were contained in the stipulation filed on the date of trial. The only significant disputed admissions are that petitioners filed their 2013 return on June 2, 2014 (which is in the stipulation), and that they did not incur any deductible commissions and fees expenses for petitioner's Schedule C business in 2012 and 2013.

Although respondent emphasizes petitioners' failure to respond to the requests, trial proceeded and evidence was taken on the filing of the 2013 return and on the deductibility of the amount petitioner reported as commissions and fees expenses. We take that evidence into account in deciding those issues and do not rely on the deemed admissions. Regardless of petitioners' failure to seek relief

**[*6]** under the Rule, we conclude that withdrawal--or disregard--of the admissions would not affect the presentation of the merits of the case by any party. See Rule 90(f). Thus the status of the admissions is moot.

Second, attached to the stipulation were documents from petitioners to which respondent objected on grounds of relevance, hearsay, and authenticity. The Court indicated that petitioners could explain at trial the purpose of the exhibits. Petitioners did not explain or offer the exhibits during trial, and they were not received in evidence. Petitioners assert in their posttrial brief that the exhibits should be received. Most of the disputed exhibits relate to Queen City's losses during financial crises and years from 1986 to 1991; they are irrelevant and hearsay. They do not establish the net operating or bad debt losses petitioners now claim. At most they support only respondent's argument and petitioner's acknowledgment that his income was assigned to Queen City because that corporation had carryforward losses that would offset any income; thus taxation on the income from his services as a stockbroker would be avoided. Respondent's objections are sustained.

Deductions

Petitioners bear the burden of proving entitlement to the deductions they claim. See Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440

**[*7]** (1934); <u>Rockwell v. Commissioner</u>, 512 F.2d 882, 886 (9th Cir. 1975), <u>aff'g</u> T.C. Memo. 1972-133. They have not satisfied the requirements of section 7491(a) to shift the burden of proof. Specifically, they have not presented credible evidence as to the factual issues relevant to those deductions. <u>See</u> sec. 7491(a)(1). In any event the evidence regarding the claimed commissions and fees establishes that the deductions are not proper.

Respondent cites longstanding authorities for the rule that income is taxable to the person who earns it. <u>Lucas v. Earl</u>, 281 U.S. 111, 114-115 (1930). This rule has been applied consistently in various contexts in which taxpayers have attempted to shift the incidence of taxation to a person or entity having less or no tax liability. <u>See, e.g.</u>, <u>Cole v. Commissioner</u>, 637 F.3d 767, 777 (7th Cir. 2011) (lawyer's attempt to assign earnings to an entity), <u>aff'g</u> T.C. Memo. 2010-31; <u>Parker v. Routzahn</u>, 56 F.2d 730 (6th Cir. 1932) (attempt to assign income to spouse); <u>Walker v. Commissioner</u>, T.C. Memo. 2012-5 (attempt to assign income to earner's children). The determination of the proper taxpayer depends upon which person or entity in fact controls the earning of the income rather than who ultimately receives the income. <u>See</u> <u>Vnuk v. Commissioner</u>, 621 F.2d 1318, 1320 (8th Cir. 1980), <u>aff'g</u> T.C. Memo. 1979-164.

**[\*8]** Petitioners ignore the longstanding rule and purport to rely on New Zealand law that has no application here. They claim that petitioner, in his capacity as the owner of Queen City, made a deal with himself as a sole proprietor to provide management or accounting services to the sole proprietorship equal in amount to what petitioner earned as a stockbroker. (He also suggested during his testimony that the payment was a contribution of capital to Queen City, which would not be deductible as a business expense.) Petitioners presented no evidence of the actual management or accounting services performed. There is no evidence that funds were actually transferred to Queen City. Petitioner at all times controlled the earning of the income. Petitioner's testimony is implausible and unreliable, and we give it no weight. The assignment of income in the guise of deductions for services was invalid, and no deductions are allowed.

There is no evidence of the source, amounts, amounts carried over from earlier years, effect of petitioners' bankruptcy on losses claimed, or other elements of the alleged net operating and bad debt losses asserted. Petitioners do not dispute that any such losses were incurred by Queen City before the proprietorship was formed. Therefore, petitioners have failed to carry their burden of proof as to these items, and no allowances may be made.

**[\*9]** <u>Penalties and addition to tax</u>

Under section 7491(c), the Commissioner bears the burden of production with regard to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose penalties. <u>See</u> <u>Higbee v. Commissioner,</u> 116 T.C. 438, 446 (2001).

Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any underpayment of Federal income tax which is attributable to negligence or disregard of rules or regulations or a substantial understatement of income tax. An understatement of income tax is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

Section 6662(c) defines negligence as including any failure to make a reasonable attempt to comply with the provisions of the Code and defines disregard as any careless, reckless, or intentional disregard. <u>See</u> sec. 1.6662-3(b)(1) and (2), Income Tax Regs. Negligence is the lack of due care or the failure to do what a reasonable and prudent person would do under the circumstances. <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985). Disregard of rules or regulations is careless if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation. Sec. 1.6662-3(b)(2), Income Tax Regs.

**[*10]** Section 6664(c)(1) provides an exception to the section 6662(a) penalty if it is shown that there was reasonable cause for any portion of the underpayment and the taxpayer acted in good faith. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability. Id. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in view of the taxpayer's experience, knowledge, and education. Id.

Petitioners reported no tax liability for 2012 or 2013, and we hold for the reasons stated above that petitioner's earnings from Jettrade must be included in their income and taxed accordingly. Thus respondent has shown a substantial understatement of income tax for each year. The evidence also establishes negligence in that petitioners did not consult competent professionals or otherwise attempt to determine their correct tax liabilities. They have not suggested reasonable cause, arguing only that their returns were correct. They are wrong, and the accuracy-related penalties will be sustained.

[*11] Section 6651(a)(1) imposes an addition to tax for late filing of a return. The addition to tax determined for 2013 under section 6651(a) applies absent a showing by petitioners of reasonable cause and a lack of willful neglect. See Higbee v. Commissioner, 116 T.C. at 446-447. Petitioner testified that he mailed the 2013 return on April 6, 2014, the date he wrote on a copy of an envelope addressed to the IRS. Petitioners stipulated that the return was filed on June 2, 2014, the date it was received by the IRS. We conclude that petitioner's memory is fallible or his testimony is otherwise unreliable, and the late filing addition to tax will be sustained.

The determination of the taxable amount of petitioners' Social Security income and self-employment tax is computational and follows from the disallowance of the Schedule C deductions. We have considered the other arguments of the parties. They are irrelevant, without merit, or unnecessary to address.

Decision will be entered for

respondent.
